```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


JOHN AND JEANNE BITTER,                         CIVIL ACTION
INDIVIDUALLY AND ON BEHALF OF
THEIR MINOR CHILDREN, KELSEY
BITTER, RACHEL BITTER, AND ETHEN
BITTER                                          NO. 05-1655

VERSUS

ORTHOTIC & PROSTHETIC                           SECTION  "J" (5)
SPECIALISTS, INC. ET AL
```

**ORDER AND REASONS**

Before the Court are the following two motions: (1) Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6) And/Or Motion for Summary Judgment on behalf of third party defendant Coventry Health Care of Louisiana, Inc.; and, (2) Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6) And/Or Motion for Summary Judgment on behalf of defendants, Orthotic & Prosthetic Specialists, Inc. and Michael Relle.  The motions are opposed. After considering the motions, oppositions, the record and applicable law, the Court finds that the motions should be GRANTED IN PART and DENIED IN PART and this matter should be REMANDED back to state court.

1

## BACKGROUND

John Bitter ("Bitter") was employed by Orthotic & Prosthetic Specialists, Inc. ("O&P"). O&P provided Bitter with group health insurance coverage through Coventry Health Care of Louisiana, Inc. ("Coventry"). On April 20, 2004, Bitter terminated his employment with O&P. On the same day, O&P faxed a termination report to Coventry, however, Bitter's date of termination was improperly stated as February 27, 2004.

After quitting his job, Bitter contacted an independent insurance agent, Katherine Almerico, and attempted to obtain continuation insurance. Bitter and Coventry discovered the error with respect to his termination date and, on May 12, 2004, Coventry faxed a Group Enrollment Form to O&P with instructions to present it to Bitter for completion. The form was completed on May 14, 2004. On May 18, 2004, O&P faxed a letter to Coventry stating that Bitter was being reinstated to March 2004, and that the June bill sent to O&P would be for March, April, May and June 2004.

On or about May 24, 2004, Bitter suffered a severe heart attack, which resulted in hospitalization and medical expenses in excess of $65,000. On that day, Plaintiffs paid their May 2004 premium of $870.69 with a personal check, which Coventry negotiated on June 11, 2004. On or about July 2, 2004, Coventry

2

retroactively terminated O&P's group coverage to February 29, 2004.

On February 25, 2005, Plaintiff filed suit in the 22nd Judicial District Court for the Parish of St. Tammany against O&P alleging that O&P was negligent by failing to pay the premium on the group health insurance policy, thereby causing monetary damages, mental aggravation and financial stress to Bitter and his family ("Plaintiffs").  On March 29, 2005, O&P filed an Answer and Third Party Demand stating that Bitter's compensation package did not include health insurance coverage after April 2, 2004.  In addition, O&P asserted a third-party demand against Coventry.  O&P alleges that Coventry customarily accepted premiums beyond the grace period described in the policy and customarily elected not to cancel the group policy or suspend the claims filed by O&P employees as a penalty permitted under the terms of the group policy.

On May 4, 2005, the lawsuit was removed to this Court based on federal question jurisdiction.  On June 23, 2005, Plaintiffs filed an Amended Complaint which added Coventry as a direct defendant and asserted that Coventry was negligent for not providing continuation of coverage to Plaintiffs for May of 2004 under either ERISA (via COBRA) or the Louisiana health insurance continuation statutes.  Further, Plaintiffs contend that Coventry

was negligent and acted arbitrarily and capriciously by retroactively cancelling the group policy and permitting Plaintiffs to believe they were insured in May of 2004. Alternatively, Plaintiffs allege that the policy issued to Plaintiffs for May was an individual family policy, not a continuation of their earlier coverage through O&P.

Coventry argues that under ERISA, the termination of O&P's group health insurance plan retroactive to February 29, 2004 for non-payment of premiums extinguishes the plan beneficiary's right to continuous coverage as of that date.  Further, Coventry contends that to the extent the health insurance Coventry issued to Plaintiffs was state continuation coverage (which is denied), the effect of the state statute is identical to the COBRA statute.  Finally, with respect to Plaintiffs' argument that the May 2004 health policy issued to Plaintiffs was an individual family policy, Coventry argues that it does not issue individual family health policies, only group coverage.

O&P asserts that it is excluded from federal laws requiring employers to provide COBRA continuation coverage to former employees because O&P has always employed fewer than twenty persons and does not qualify pursuant to 29 U.S.C. § 1161(b). Further, O&P contends that Coventry's retroactive cancellation of the group policy caused Plaintiffs' damage.

**LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a complaint for failure to state a claim upon which relief can be granted. The Court will dismiss a plaintiff's complaint if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). In making this determination, "the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002). "[The court] will not go outside the pleadings and ... cannot uphold the dismissal 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *See Hernandez v. Maxwell*, 905 F.2d 94, 96 (5th Cir. 1990)(quoting *Rankin v. City of Wichita Falls*, 762 F.2d 444, 446 (5th Cir. 1985)). When material outside the pleadings is considered, however, the court will generally exercise its discretion to treat the motion as one for summary judgment. The court will then evaluate such extra-pleading materials as to determine whether a genuine issue of material fact exists. *See St. Paul Ins. Co. of Bellaire v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)(citation omitted); *see also* FED. R.

CIV. PRO. 12 (West 2004); *South Central Bell Telephone Co. v. Canal Place Ltd. Partnership*, 927 F.2d 867, 868 (5th Cir. 1991).

## DISCUSSION

**A.   Plaintiffs' claims based on continuation of coverage under ERISA**

The Plan at issue is a group health insurance plan subject to ERISA and, therefore, is governed by federal law. Coventry argues that it is not liable because O&P was not required to offer continuation coverage under COBRA, and when a policy is cancelled for non-payment of premiums, continuation coverage ceases to be available. Specifically, 29 U.S.C. § 1161 provides that

> **(a) In general**
> The plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.
> **(b) Exception for certain plans**
> Subsection (a) of this section shall not apply to any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year.

For purposes of 29 U.S.C. § 1161, "continuation coverage" means coverage under the plan that meets the following requirements: "[t]he coverage must extend for at least the period beginning on the date of the qualifying event and ending not earlier than the earliest of the following: ... [t]he date on which the employer

6

ceases to provide any group health plan to any employee" or "[t]he date on which coverage ceases under the plan by reason of a failure to make timely payment of any premium required under the plan with respect to the qualified beneficiary." 29 U.S.C. § 1162(B) and (C).

Plaintiff concedes that the number of employees at O&P was less than twenty. Accordingly, 29 U.S.C. § 1161(b) exempts O&P from having to provide a continuation coverage election under the plan. Furthermore, even if Plaintiff was permitted to elect a continuation of coverage, 29 U.S.C. § 1162(B) and (C) provides that the coverage must only extend from the date Plaintiff's employment terminated to the date on which the O&P ceased to provide a group health plan to any employee or the date on which coverage under the plan ceased because of failure to pay any premiums required under the plan.

Plaintiff's employment ended on April 20, 2004, and the date on which the coverage under the plan ceased because of failure to pay the premiums was February 29, 2004. Therefore, under 29 U.S.C. § 1162(B) and (C) Plaintiff was not entitled to continuation of coverage past February 29, 2004.

**B.   State Law**

**(1)   Was Coventry entitled to retroactively cancel the Policy under State law?**

Although Coventry denies that state law applies, Coventry

contends that even if state law applies in this case, Plaintiffs' state law claim fails. Louisiana Revised Statute 22:636(F) provides:

> No insurer shall cancel or refuse to renew any policy of group or family group health and accident insurance **except for nonpayment of premium** or failure to meet the requirements for being a group or family group insurance policy until sixty days after the insurer has mailed written notice of such cancellation or nonrenewal by certified mail to the policyholder. The notice shall also include the reason the policy is being cancelled.

Plaintiff argues that Coventry did not comply with the statute because they did not provide sixty days written notice. However, the statute contains an exception, highlighted above, which dispenses with the notice requirement for "nonpayment of premium". Further, the Group Master Contract provides:

> **TERMINATION OF THE GROUP MASTER CONTRACT**
> The Contract Holder will receive at least sixty (60) days notice, unless otherwise specified below, prior to an cancellation of nonrenewal of this Agreement. We may nonrenew or discontinue this Agreement at any time based only on one or more of the following reasons:
> A. <u>Failure to Make Payments</u>
> If the Contract Holder fails to pay premiums or contributions in accordance with the Group Master Contract, this Agreement shall terminate effective the last day for which premium and contributions were paid in full.

According to the contract between O&P and Coventry, the Agreement "shall terminate effective the last day for which premium and contributions were paid in full."

Plaintiffs' cite *Ceasar v. New England Insurance Co.*, 616

8

So. 2d 850 (La. App. 3 Cir. 1993) and argue that the Louisiana Third Circuit Court of Appeal has found that an insurance company cannot retroactively cancel coverage. However, the policy language in *Ceasar* specifically required written notice when the insured failed to pay a premium. No such provision exists in the Policy at issue in this case.

While O&P argues that Coventry allowed O&P to customarily pay beyond the time set forth in the Policy, O&P cites no portion of the Policy that requires Coventry to extend this courtesy to O&P. Specifically, the Group Master Contract between O&P and Coventry states that the contract has a

> thirty-one (31) day grace period. This provision means that if any required premium payment is not paid on or before the date it is due, it may be paid during the grace period. ... If any required premium payment is not paid by the end of the grace period, benefits for all enrolled Members shall be terminated on the last day for which premium payments were paid.

Accordingly, Coventry acted in accordance with the terms of the Plan when it cancelled the policy.

**(2) Plaintiffs' claims against Coventry based on continuation of coverage under La. R.S. 22:215.13**

As explained above, Plaintiffs' insurance was terminated on February 29, 2004 due to failure of O&P to pay the group premium. Louisiana Revised Statute 22:215.13 establishes regulations with respect to group health insurance continuation. Section 215.13(F) provides that "an employee or member electing

9

continuation shall pay to the group policyholder or his employer, in advance, the amount of contribution required by the policyholder or employer." To be eligible for continuation of coverage, "the employee or member shall make a written election of continuation, on a form furnished by the group policyholder, and pay the first contribution, **in advance, to the policyholder or employer on or before the date on which the employee's or member's insurance would otherwise terminate**." La. Rev. Stat. 22:215.13(F)(emphasis added).

The group's insurance was cancelled on February 29th and Bitter's employment terminated on April 20, 2004. Plaintiff did not complete the form for coverage continuation until May 15, 2004, and the premium for coverage was not paid until May 24, 2004. Accordingly, Plaintiff was not eligible for continuation of coverage under state law.

**(3) Plaintiffs' claim that the May 2004 policy was an individual family policy**

Paragraph XIII of Plaintiffs' First Amended Complaint alleges that Coventry issued an individual family policy to Plaintiffs in May of 2004. When considering a Rule 12(b)(6) motion, the Court is required to view the facts in a light most favorable to the non-moving party. With respect to Plaintiffs' contention that Coventry insured Plaintiffs for May 2004 under an individual family policy, Coventry asserts that it does not issue

individual policies.  The pleadings do not contain any supporting affidavits or facts that warrant dismissal of this claim. Therefore, Coventry's motion with respect to this particular claim should be denied.

Whether this claim falls within ERISA's preemptive scope depends on whether the insurance policy qualifies as an "employee welfare benefit plan" for ERISA purposes.  ERISA defines an employee welfare benefit plan, in pertinent part, as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ....

29 U.S.C. § 1002(1).  The test to determine whether a policy qualifies as an ERISA "employee welfare benefit plan" is whether a plan (1) exists; (2) falls outside the safe-harbor provision established by the Department of Labor; and (3) is established or maintained by an employer intending to benefit employees. *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993).

As explained above, the employee welfare benefit plan terminated on February 29, 2004 and Plaintiffs were not entitled to continuation coverage under ERISA.  Therefore, Plaintiffs' claim that an individual family policy was issued to Plaintiffs in May of 2004 falls outside the scope of ERISA and does not

involve a federal question for purposes of federal subject matter jurisdiction.

**(4) Plaintiffs' claim against O&P for negligence/breach of contract for failing to pay the group premiums**

To avoid a break in insurance coverage, an employee must apply to the state HIPPA pool within 63 days of the day group coverage ended.  HIPPA requires that when an employee moves to a new job, his or her subsequent employer or health plan must give the employee "credit" for prior continuous coverage.  If an employee had insurance coverage for the requisite period of time by the previous employer or health plan without a gap in coverage of more than 63 days, that employee must be eligible for insurance from the new employer regardless of any preexisting condition.  *See* 29 C.F.R. § 2590.701-4 (2005).  O&P's failure to pay premiums caused coverage to terminate on February 29, 2004 and led to a break in coverage for more than 63 days.

According to O&P, on April 2, 2004 it notified its employees that it was cancelling its group health plan effective April 30, 2005.  O&P contends that each employee was asked to sign an O&P form waiving group health insurance coverage.  Although it appears that Bitter signed the form, his signature is scratched through.  Bitter contends he scratched through his signature before giving the form back to O&P.  O&P argues that Bitter went into his personnel file and scratched through his signature.

Thus, a factual dispute exists as to whether Bitter waived group coverage and when O&P's duty to provide insurance ended. Therefore, O&P's motion with respect to this claim should be denied. Accordingly,

IT IS ORDERED that **Coventry's Motion to Dismiss And/Or Motion for Summary Judgment** (Rec. Docs. 3 and 19) should be and hereby is **DENIED** with respect to Plaintiffs' claim that Coventry issued an individual family policy in May 2004; and, Coventry's motion with respect to the remaining claims should be and hereby is **GRANTED**;

IT IS FURTHER ORDERED that **Orthotic & Prosthetic Specialists, Inc. and Michael Relle's Motion to Dismiss And/Or Motion for Summary Judgment** (Rec. Doc. 17) should be and hereby is **DENIED** with respect to Plaintiffs' claims against O&P for negligence/breach of contract for failing to pay the group premiums; and, Defendant's motion with respect to Plaintiffs' claims concerning continuation of coverage under ERISA should be and hereby is **GRANTED;**

IT IS FURTHER ORDERED that pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over the remaining state law claims and hereby **REMANDS** this matter to state court.

New Orleans, Louisiana this the 17th day of August, 2005.

                                                    _____
                                                    CARL J. BARBIER
                                                    UNITED STATES DISTRICT JUDGE